IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

**BETTY BURGESS and CARTER
BURGESS, Individually and as
Parents an Next Friend of Crockett
Burgess, a minor,**

    Plaintiffs-Appellants,

                                        Coffee Circuit No.27,148

Vs.                                 C.A. No.01A01-9609-CV-00436

**RICK FLOYD and KERNEY CISCO
d/b/a TULLAHOMA CEE BEE STORE,**

    Defendants-Appellees.
_____

FROM THE COFFEE COUNTY CIRCUIT COURT
THE HONORABLE JOHN W. ROLLINS, JUDGE

Doyle E. Richardson; Rogers, Richardson & Duncan
of Manchester, For Appellants

John R. Rucker, Jr.; Rucker, Rucker & Coleman
of Murfreesboro, For Appellees

*AFFIRMED*

Opinion filed:



**FILED**

**May 14, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This is a product liability case. Plaintiffs, Betty Burgess and Carter Burgess (the Burgesses), individually and as parents and next friend of Crockett Burgess, a minor, appeal the trial court's order granting summary judgment in favor of defendants, Rick Floyd and Kerney Cisco d/b/a/ Tullahoma Cee Bee Store (Cee Bee Store).

On February 11, 1990, the Burgesses purchased two and a half cases of ProSobee from the Cee Bee Store for their eight-month-old son, Crockett Burgess, with a voucher provided to them by the Women, Infants and Children's Supplemental Food Program. ProSobee is a concentrated baby formula manufactured by Mead Johnson & Company and distributed to the Cee Bee Store by C.B. Ragland & Company. Rick Floyd and Kerney Cisco are the owners and operators of the Cee Bee Store. The Burgesses first finished two cans of ProSobee left from a previous purchase. On February 13, 1990, the Burgesses went to visit Mrs. Burgess's mother. While at her mother's house, Mrs. Burgess prepared a can of the ProSobee formula that she bought from the Cee Bee Store two days earlier. Mrs. Burgess did not check the expiration date on the ProSobee can and, after preparing the ProSobee, threw the can into her mother's trash. The ProSobee looked and appeared normal. It was white and did not have any lumps. Mrs. Burgess shook up the can, opened it, and poured the ProSobee into a jug. She then mixed in distilled water that she kept in the refrigerator, poured the mixture into individual bottles, put the nipples on the bottles, and put the bottles into the refrigerator. Before feeding Crockett, she put his bottle in a bowl and ran warm tap water over the bottle to warm it up. Crockett drank the whole bottle at about 11:00 a.m. and then fell asleep. When he woke up from his nap a couple of hours later, he began throwing up and had diarrhea. The Burgesses ate dinner and then decided to take Crockett home. They stopped off at the Cee Bee store to buy cigarettes. Mrs. Burgess told the cashier that Crockett was not feeling well, and the cashier told her to go home and check the baby formula. Mrs. Burgess went home, checked the unopened cans of formula stored under her sink, and found that some of the cans had an April 1986 expiration date. After speaking with Dr. Shirley Bard, Crockett's pediatrician, the Burgesses took Crockett to the Harton Regional Medical Center where he was admitted and remained for six days. Crockett was diagnosed with dehydration due to gastroenteritis and diarrhea and tested positive for rotavirus, a virus transmitted by humans. He was transferred to Vanderbilt University Medical Center, and his diagnosis upon discharge was gastroenteritis.

On February 8, 1991, the Burgesses filed suit against Mead Johnson & Company (Mead Johnson), C.B. Ragland & Company, and Rick Floyd and Kerney Cisco d/b/a Tullahoma Cee Bee Store alleging that the baby formula was spoiled, poisonous, and contaminated and that Crockett suffers from developmental deficits and delays as a result of ingesting the outdated ProSobee. The complaint relies on the theories of *res ipsa loquitur*, strict liability, negligence, and breach of warranty. All of the defendants filed motions for summary judgment, and on May 27, 1994, the trial court granted summary judgment on the issue of *res ipsa loquitur* as to all defendants and on strict liability as to defendants C.B. Ragland Company and the Cee Bee Store. The trial court also overruled the defendants' motions on the issues of negligence and breach of the implied warranty of merchantability. On June 21, 1994, the Burgesses voluntarily dismissed their lawsuit. The Burgesses refiled their suit against the same defendants on May 26, 1995 and, as to the defendants in this appeal, rely on the theories of negligence and breach of implied warranty of merchantability. On May 1, 1996, all of the defendants again filed motions for summary judgment, and after a hearing on July 3, 1996, an order was entered on July 11, 1996 granting summary judgment in favor of all the defendants. The Burgesses appeal the trial court's decision only as to defendants Rick Floyd and Kerney Cisco d/b/a Tullahoma Cee Bee Store.

The Burgesses basically present one issue for review: Whether the trial court erred in granting summary judgment in favor of defendants Rick Floyd and Kerney Cisco d/b/a Tullahoma Cee Bee Store on the issues of negligence and breach of the implied warranty of merchantability.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. On a motion for summary judgment, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine

issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (emphasis in original)(citations omitted). Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Id.* (citing *Dunn*, 833 S.W.2d at 80).

The Burgesses assert that the trial court erred in granting summary judgment because there is a genuine issue of material fact concerning the liability of appellees.

Product liability actions in this state are governed by the Tennessee Products Liability Act of 1978. T.C.A. §§ 29-28-101 *et seq.* (1980 & Supp. 1996). Section 29-28-105 provides the following:

> **29-28-105. Determination of defective or dangerous condition. -** (a) A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer of seller.
>
> (b) In making this determination the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable. Consideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.
>
> (c) The provisions of this section do not apply to an action based on express warranty or misrepresentation regarding the chattel.
>
> (d) A product is not unreasonably dangerous because of failure to adequately warn of a danger or hazard that is apparent to the ordinary user.

T.C.A. § 29-28-105 (1980). As this Court stated in *Fulton v. Pfizer Hospital Products Group, Inc.*, 872 S.W.2d 908 (Tenn. App. 1993):

> Plaintiff must prove that the product was defective, regardless of the legal theory upon which he relies.
>
> > Indeed, it makes no difference whether the complaint is couched in terms of negligence, strict liability, or breach of warranty, it has generally been held in the State of Tennessee that in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective [or] unreasonably

4

> dangerous at the time the product left the control
> of the manufacturer.

*Id.* at 911 (citations omitted). Section 29-28-102(2) provides the following definition of a defective condition:

> (2) "Defective condition" means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption.

T.C.A. § 29-28-102(2) (1980). The Burgesses assert that the can of ProSobee ingested by Crockett was defective and that they are entitled to recovery.

In support of its motion for summary judgment, Cee Bee Store relies on the affidavits submitted in support of its co-defendants as well as the affidavit submitted by Rick Floyd. William R. Cross, the Director of Quality Assurance at Mead Johnson, submitted an affidavit stating that he reviewed the records documenting the testing of the batch of ProSobee alleged by the Burgesses to be defective. Cross stated that FDA regulations require that all sterile products, including baby formula, be manufactured to be free from contaminants such as bacteria and other substances. He further stated that the FDA regulations require that the product be sealed in a container that prevents the entry of microorganisms or other harmful substances when normally stored so that the products remains sterile after processing and until the container is opened. Cross stated that ProSobee is manufactured as a sterile product under FDA regulations and that the sterility of the product is not affected in any manner by its "use by" date or expiration date. A can of ProSobee that is past its expiration date will maintain its labeled amounts of minerals, protein, fat, and carbohydrates, but it may not provide the minimum levels of vitamins set forth on the label. It is for these reasons that the Mead Johnson stamps an expiration on ProSobee baby formula. Cross further stated that a properly stored, unopened can of ProSobee consumed even four years beyond its expiration date will not grow bacteria or organisms harmful to a child and will not spoil or deteriorate to the extent that harm to an infant will result.

Dr. Donna Seger, a toxicologist and head of the Poison Control Center at Vanderbilt University Medical Center, also submitted an affidavit in support of Mead Johnson. Dr. Seger stated that it was her opinion, based on a reasonable degree of medical certainty, that a can of ProSobee four years past its "use by" date would not contain poisonous toxins.

5

Dr. George L. Baker, Vice President and Medical Director for Mead Johnson, also submitted an affidavit in support of Mead Johnson, stating that other than not satisfying the vitamin allowance as stated on the container, a single feeding of ProSobee past its expiration date will not otherwise affect or harm an infant. He further stated that it was his opinion, to a reasonable degree of medical certainty, that ingesting a can of ProSobee outdated by four years would not cause gastroenteritis or diarrhea.

Rick Floyd also submitted an affidavit stating that he checked the dates of all the products when he bought the Cee Bee Store in November of 1988 and that all of the out-of-date products were removed from the store. He also stated that ProSobee is a fast moving product, that it is difficult to keep the formula in stock, and that he has run out of the formula on many occasions.

The defendants also submitted the deposition of Dr. Shirley Bard, Crockett's pediatrician, who stated that she could not say to a reasonable degree of medical certainty whether the water mixed with the ProSobee, the jug used to mix the water and the ProSobee, or a "bug" caused Crockett's illness. She further stated that she had no medical or scientific proof that ProSobee develops toxins if past its expiration date. In addition, Dr. Bard admitted that the test performed on one of the out-of-date ProSobee cans supplied by the Burgesses was negative for bacteria.

In response to the defendants' motions for summary judgment, the Burgesses submitted the affidavit of Dr. Bard, which incorporated a transcript of an interview in which she stated that she believes Crockett's illness was caused by the ProSobee because "the proximity is just there." The Burgesses also submitted Dr. Bard's medical records relating to Crockett's illness and the complaints filed with the United States Food & Drug Administration (FDA) of four infants who became ill after ingesting outdated cans of ProSobee.

The Burgesses did not set forth specific facts to prove that the particular can of ProSobee ingested by Crockett was past its expiration date. Even assuming that Crockett ingested a can of ProSobee that was past its expiration date, the Burgesses offered no proof that an outdated can of ProSobee is defective. As this Court asserted in *Whaley v. Rheem Manufacturing Co.*, 900 S.W.2d 296 (Tenn. App. 1995), mere proof of an injury is not enough by itself to prove the existence of a defect. *Id.* at 299. Thus, the mere fact that Crockett became ill after drinking an out of date can of ProSobee is not enough in and of itself to establish that an out of date can of

ProSobee is defective. In addition, even if the complaints of similar illnesses on file with the FDA would be admissible to prove that an outdated can of ProSobee is defective, the Burgesses failed to set forth any specific facts to establish that Crockett's illness was caused by ingesting an outdated can of ProSobee.

In summary, we conclude that the Burgesses did not establish that an outdated can of ProSobee is a defective product under T.C.A. § 29-20-102 or that Crockett's illness was caused by ingesting an outdated can of ProSobee. There are no genuine issues of material fact, and appellees are entitled to judgment as a matter of law.

Accordingly, the order of the trial court is affirmed. Costs of this appeal are assessed against appellants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

7